UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHRISTOPHER JASON THOMPSON,**

      **Plaintiff,**

  v.                                              **Civil Action 3:24-cv-86**
                                                        **Judge Thomas M. Rose**
                                                        **Magistrate Judge Chelsey M. Vascura**

**SCOTT SPRINGHETTI,** *et al.*,

      **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

    Plaintiff, Christopher Jason Thompson, an Ohio inmate who is proceeding without the assistance of counsel, brings this action against several employees of the Tri County Regional Jail ("TCRJ") under 42 U.S.C. §§ 1983, 1985, and 1986, as well as the Ohio Constitution, primarily for violation of his constitutional rights arising out Defendants' forcible administration of a nasal swab COVID-19 test. (Compl., ECF No. 1-2.) This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims arising out of the forcible administration of the COVID test for lack of subject-matter jurisdiction and further **RECOMMENDS** that the Court

**DISMISS** Plaintiff's claims for excessive force and equal protection violations for failure to state a claim on which relief can be granted. Finally, it is **ORDERED** that Plaintiff's claims against Derrick Young are **SEVERED** and **DISMISSED WITHOUT PREJUDICE** to re-filing in a separate action.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF No. 1.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he has $19.27 in his prison account, which is insufficient to pay the filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number A807482) at Northern Central Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office.

## I. FACTS

At all relevant times, Plaintiff was a pretrial detainee at TCRJ. Judge Costello of the Court of Common Pleas for Madison County, Ohio, appointed attorney Steven T. Fox to represent Plaintiff in his criminal proceedings. (*See* Case No. CRI20210212, Court of Common Pleas, Madison County, Ohio, Nov. 4, 2021 Entry of Arraignment.)[1] On February 7, 2022, Mr. Fox entered a plea of not guilty by reason of insanity on behalf of Plaintiff and requested that Judge Costello refer Plaintiff for an evaluation of Plaintiff's mental status in addition to a contemporaneous request for an evaluation of Plaintiff's competency to stand trial. (*Id.* at Feb. 7, 2022 Plea of Not Guilty by Reason of Insanity.) On April 18, 2022, Judge Costello ordered that Plaintiff be transported to Summit Behavioral Healthcare ("SBH") so that he could be observed for a psychological evaluation. (*Id.* at Apr. 21, 2022 Entry.)

On May 6, 2022, several of the Defendants attempted to transport Plaintiff to SBH; however, SBH had a policy at the time that required Plaintiff to provide a negative test for COVID-19 prior to his admittance. Plaintiff refused to submit to the test. When notified by the prison, Judge Costello declined to order Plaintiff to submit to a COVID test against his will.

---

[1] The undersigned may take judicial notice of state-court proceedings in accordance with Federal Rule of Evidence 201. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (noting that courts may take judicial notice of state-court records).

(Compl. 3, ECF No. 1-2.) After that decision, Judge Costello held a telephone conference with prosecution and defense counsel and requested additional input from the parties on how to proceed. (Case No. CRI20210212, Court of Common Pleas, Madison County, Ohio, May 20, 2022 Mem. re: Competency Evaluation.) Mr. Fox submitted a memorandum contending that Plaintiff's refusal to submit to the COVID test was further evidence of his "deteriorated mental condition" and requested that Judge Costello "order Mr. Thompson to be tested, even if by force," so that SBH could complete Plaintiff's competency evaluation. (*Id.*) Mr. Fox relied on Ohio Revised Code § 2945.38, which permits state courts to order criminal defendants to undergo certain medical treatments, even against their will. (*Id.*)

On June 7, 2022, Judge Costello ordered Plaintiff "to submit to a COVID-19 antigen home test, by force if necessary, to be performed by staff at Tri-County Regional Jail." (*Id.* at Jun. 7, 2022 Corrected Entry.) That same day, over Plaintiff's refusal to submit to the test voluntarily, several of the Defendants brought Plaintiff to the intake/release area and informed him that they would administer a COVID test. (Compl. 2, ECF No. 1-2.) Plaintiff asked Defendant Lieutenant Whalls to return to his cell to retrieve a legal citation that supported Plaintiff's right to refuse the test, but Lt. Whalls stated, "it does not matter what you have, we have an order from a Judge Costello, you can deal with that later." (*Id.*) Several Defendants then administered a nasal swab COVID test on Plaintiff against his will. (Compl. 2, ECF No. 1-2.) Specifically, "[Defendant] Mr. Ellis handcuffed Plaintiff and Mr. Ellis and [Defendant] Mr. Grimm held Plaintiff's arms while [another Defendant, TCRJ's head nurse with first name] Kyle swabbed Plaintiff's nose."[2] (*Id.*) Plaintiff was then transported to SBH for evaluation. (*Id.* at 2–

---

[2] Plaintiff alleges that additional Defendants Jeremy Walters, Ms. Egbert, and Mr. Dio were also present during the administration of the test, but does not allege that they participated in the test's administration or engaged in any sort of misconduct. (Compl. 2, ECF No. 1-2.) Plaintiff

4

3.) On June 28, 2022, SBH filed a report indicating Plaintiff was competent to stand trial and did not meet the criteria for the Not Guilty by Reason of Insanity plea. (Jun. 28, 2022 Letter, ECF No. 1-2, PAGEID #47.) Plaintiff was later convicted after a jury trial on several offenses and sentenced to several years in prison. (Case No. CRI20210212, Court of Common Pleas, Madison County, Ohio, Nov. 2, 2022 Judgment Entry of Sentence and Conviction.)

Plaintiff filed his Complaint in this Court on February 22, 2024, asserting that Defendants violated his rights under the United States and Ohio Constitutions by forcibly administering the COVID test and placing him in medical housing for 90 days. (Compl., ECF No. 1-2.) As relief, Plaintiff seeks $5 million in compensatory and punitive damages. (*Id.* at 4.)

## II. STANDARD OF REVIEW

**A.      Initial Screen pursuant to 28 U.S.C. §§ 1915, 1915A**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \* \* \*
>
>      (B) the action or appeal—

---

further alleges that Defendants Scott Springhetti and Luke McKee, TCRJ's Director and Assistant Director, respectively, are liable due to their implicit authorization of the other Defendants' actions. (*Id.* at 13.)

5

>    (i) is frivolous or malicious; [or]
>
>    (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain

6

sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

B.     **Subject-Matter Jurisdiction**

As explained above, under 28 U.S.C. § 1915(e), the federal *in forma pauperis* statute, Courts must *sua sponte* dismiss an action upon determining that an *in forma pauperis* complaint fails to state a claim on which relief can be granted. In this case, however, upon review of Plaintiff's Complaint, the undersigned determines that it is unnecessary to consider the merits of certain of the claims he advances because this Court lacks subject-matter jurisdiction to hear such claims. When the face of the complaint provides no basis for federal jurisdiction, the Court may dismiss an action as frivolous and for lack of subject-matter jurisdiction under both 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3). *Williams v. Cincy Urban Apts.*, No. 1:10-cv-153, 2010 WL 883846, at *2 n.1 (S.D. Ohio Mar. 9, 2010) (citing *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. June 22, 1999) (table)).

7

III.  ANALYSIS

Plaintiff asserts that the forcible administration of the COVID test against his will violated several provisions of the United States and Ohio Constitutions. Plaintiff also alleges that Defendants used excessive force when administering the test, and that Plaintiff was placed in medical housing on a discriminatory basis. Finally, Plaintiff alleges that Defendant Derrick Young, a psychological evaluator for Tri County Mental Health and Counseling Services Inc., made misleading statements to the state court. The undersigned considers each of Plaintiff's claims in turn.

A.  **This Court lacks subject-matter jurisdiction over Plaintiff's claims arising directly out of Defendants' forcible administration of the COVID test.**

Plaintiff's claims that his constitutional rights were violated by Defendants' administration of the COVID test against his will are barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983). "The *Rooker-Feldman* doctrine embodies the notion that appellate review of state-court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005). "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548 (cleaned up). Notably, the

decision of the state court need not be a "final judgment" to implicate *Rooker-Feldman*; all that is required is that the state court issued a "merits determination," as opposed to taking a "merely ministerial" action. *See RLR Invs., LLC v. City of Pigeon Forge, Tennessee*, 4 F.4th 380, 389 (6th Cir. 2021) (holding that a state court decision is a "judgment" for *Rooker-Feldman* purposes if the state-court judge "investigates, declares and enforces liabilities as they stand on present or past facts and under laws.") (quoting *Feldman*, 460 U.S. at 479).

Here, the majority of Plaintiff's claims ask this Court to find that the Defendants violated Plaintiff's federal and Ohio constitutional rights when administering a COVID test against Plaintiff's will. Importantly, however, Defendants were acting pursuant to a state-court order. Thus, it was not Defendants' decision to administer the test; rather, the "source of the injury" was Judge Costello's order requiring Plaintiff "to submit to a COVID-19 antigen home test, by force if necessary, to be performed by staff at Tri-County Regional Jail." (*Id.* at Jun. 7, 2022 Corrected Entry.) That order was issued after Judge Costello conducted an investigation, including consideration of counsel's arguments regarding the state court's authority to order forcible administration of the test, and was therefore a merits (as opposed to ministerial) determination. *See RLR Invs.*, 4 F.4th at 389. Because Plaintiff's claims arising out of the forcible administration of the COVID test are essentially an appeal of the state court's June 7, 2022 order, it is **RECOMMENDED** that these claims be **DISMISSED** for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

B.  **Plaintiff fails to state a claim for excessive force.**

Plaintiff's claim that the Defendants employed excessive force when administering the COVID test is not barred by the *Rooker-Feldman* doctrine because, even if the undersigned were to assume for the sake of argument that the state court's order was valid, it would be possible for Defendants to use more force than was necessary or reasonable when administering the test. *See*

9

*Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (pretrial detainees can prove excessive force under the Fourteenth Amendment when "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"). However, Plaintiff does not allege facts on which the undersigned could rely to conclude that the force used was excessive. Plaintiff alleges only that Mr. Ellis handcuffed him and that Mr. Ellis and Mr. Grimm held Plaintiff's arms while Kyle swabbed his nose. Given that Defendants were ordered by the state court to administer the test by force, if necessary, and given Plaintiff's repeated refusals to take the test voluntarily, there is no indication that Defendants used any more force than was necessary or reasonable. Accordingly, it is **RECOMMENDED** that Plaintiff's excessive force claim be **DISMISSED** for failure to state a claim on which relief can be granted.

C.     **Plaintiff fails to state an equal protection claim.**

Plaintiff also alleges in passing that he was confined by Defendants to segregated housing in a medical cell for 90 days prior to his evaluation by SBH, asserting that this segregation constituted "discrimination." (Compl. 3, ECF No. 1-2.) The undersigned construes this claim as one for violation of equal protection under the Fourteenth Amendment. To state an equal protection claim, a prisoner must allege sufficient facts to raise a plausible inference "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990) (cleaned up), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n. 4 (6th Cir. 2017); *see also Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir. 2000); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 255–56 (1995)). Alternatively, Plaintiff may state a "class-of-one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th

10

Cir. 2009) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff's allegations do not demonstrate differential treatment from those similarly situated. In fact, the only allegations related to Plaintiff's equal protection claim are his cursory references to his housing in a medical cell as "discriminatory." As set forth above, such "naked assertion[s] devoid of further factual enhancement" are insufficient to state a plausible claim for relief. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Accordingly, it is **RECOMMENDED** that Plaintiff's equal protection claim be **DISMISSED** for failure to state a claim on which relief can be granted.

D.    **Misjoinder of Derrick Young**

Plaintiff also advances claims against Defendant Derrick Young, whom Plaintiff describes as a "contracted employee of Tri County Mental Health and Counseling Services Inc." (Compl. 2a, ECF No. 1-2.) Plaintiff alleges that during the course of Plaintiff's criminal proceedings in state court, Mr. Young made statements that were "false and deliberately misleading," "participated in the deliberate and intentional abuse of process," and falsely represented to the state court that he had evaluated Plaintiff. (*Id.* at 21, 23.)

Federal Rule of Civil Procedure 20, which governs persons who may be joined in one action, provides in pertinent part as follows:

> Persons . . . may be joined in one action as defendants if:
>
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to arising out of the same transaction, occurrence, or series of transactions or series of transactions or occurrences; and
> >
> > (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). This means that a plaintiff may not "combine into one lawsuit unrelated claims against different defendants." *Robinson v. Rodarte*, 2017 WL 1017929, at *2 (E.D. Mich. Feb. 6, 2017), report and recommendation adopted at 2017 WL 994350 (E.D. Mich. Mar. 15,

2017). In the context of claims brought by inmates, the United States Court of Appeals for the Seventh Circuit has also observed that, "[u]nrelated claims against different defendants belong in different suits . . . to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 506 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Federal Rule of Civil Procedure 21 provides the remedy for such misjoinder and states as follows:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. "Where parties have been misjoined, a district court may drop a party or sever a claim against a party, but may not dismiss the action on that basis." *Roberts v. Doe*, No. 16-2082, 2017 WL 3224655, at *2 (6th Cir. Feb. 28, 2017); *see also Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) (citing Fed. R. Civ. P. 21) ("[T]he proper remedy for such misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice."); *Prince v. Elum*, No. 12-15526 (E.D. Mich. Jan. 14, 2013) (*sua sponte* severing and dismissing claims without prejudice under Rule 21 in prisoner civil rights case for misjoinder).

Plaintiff has misjoined Mr. Young in this case because his claims against Mr. Young do not arise out of the same transaction, occurrence, or series of transactions or occurrences. That is, Mr. Young is not alleged to have been involved in the remaining Defendants' forcible administration of the COVID test or Plaintiff's placement in medical housing. Accordingly,

12

Plaintiff's claims against Mr. Young are **SEVERED** and **DISMISSED WITHOUT PREJUDICE** to re-filing in a separate action.

## IV. DISPOSITION

For the foregoing reasons, Plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED**. The undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims arising out of the forcible administration of the COVID test for lack of subject-matter jurisdiction and further **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims for excessive force and equal protection violations for failure to state a claim on which relief can be granted. Finally, it is **ORDERED** that Plaintiff's claims against Derrick Young are **SEVERED** and **DISMISSED WITHOUT PREJUDICE** to re-filing in a separate action. Plaintiff is **ORDERED** to list 3:24-cv-86 as a related case if he elects to file an additional action.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE